IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LESPIA J. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. _____ |
| | ) |
| GEORGE M. McMILLAN, SHERIFF, | ) |
| ROANOKE CITY SHERIFF'S OFFICE, | ) |
| **Serve:  George M. McMillan, Sheriff** | ) |
| **340 Campbell Avenue, SW** | ) |
| **Roanoke, Virginia 24016** | ) |
| **(City of Roanoke)** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Lespia J. King moves for judgment against defendant George M. McMillan, Sheriff, Roanoke City Sheriff's Office ("Sheriff"), and as grounds therefore states as follows:

(1)     This is suit for gender discrimination and sexual harassment and constructive discharge and assault and battery authorized and instituted pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §§2000e, *et seq.* and the common law of Virginia.

(2)     This Court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(4).

(3)     Plaintiff timely filed her charge with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights; received a notice of right to sue dated June 8, 2005; and files this action within 90 days of receipt of the notice of right to sue.

(4)     The plaintiff is a female and resident of the City of Roanoke, Virginia.

(5)     On information and belief, the Sheriff is a constitutional official duly elected pursuant to the law of the Commonwealth of Virginia.  At all times material hereto, the Sheriff employs more than 200 persons.

(6)      Plaintiff went to work for Sheriff George M. McMillan and the Roanoke City Sheriff's Office in August 2000 as a deputy in the Roanoke City Jail.  From about January 2003 until she resigned March 2004, Sheriff McMillan sexually harassed plaintiff and other female employees and permitted a hostile and offensive work environment to exist which resulted in plaintiff's resignation in March 2004.

(7)      For example, shortly after plaintiff began work, while at the gun range the Sheriff insisted on "helping" plaintiff put a gun belt on her waist, touching her waist during the process and causing plaintiff to feel uncomfortable.

(8)      Thereafter, when Sheriff McMillan encountered plaintiff at work, he on several occasions embraced her and pulled her toward him.  As he did so, his hands slid toward her buttocks and lingered there until she pulled away.  This unwanted touching occurred several times a year during plaintiff's employment.

(9)      On one occasion in January 2003 plaintiff met with Sheriff McMillan to request a transfer from one shift to another.  Plaintiff had heard that the Sheriff was "hands on" with female employees and therefore dressed conservatively.  The Sheriff closed the door to his office and moved his chair next to plaintiff's and kept plaintiff in his office for nearly an hour while the Sheriff questioned plaintiff about her personal life, particularly about dating another employee. The Sheriff talked with plaintiff about her "future" and told her "you're going to have to make a choice, G--- [the other employee] or me."  The Sheriff also told plaintiff that she was a very attractive young woman, "very special," and that he liked her hair.  Toward the end of the conversation, the Sheriff asked plaintiff to sit on his lap.  She protested, and at the end of the meeting, the Sheriff stated that he wanted a kiss.  Plaintiff left the office feeling humiliated and vowed that she would attempt to limit her contact with the Sheriff to the extent possible.

(10)      On another occasion in October 2003, plaintiff attended a Western Regional Jail Association dinner at the Clarion Hotel in Roanoke.  Sheriff McMillan and other deputies were present.  When plaintiff greeted Sheriff McMillan, he wanted to give plaintiff a hug.  When she

attempted to step away, Sheriff McMillan continued to hold on to her hip and buttocks.  Sheriff McMillan stated, "I'm going to hold on to you until G--- [the other employee] notices and gets jealous," or words to that effect.  Plaintiff tried to get away, but the Sheriff held on tightly and made other comments about the male deputies.  Plaintiff eventually broke away from the Sheriff.

(11)    The next day at work, a captain in the Sheriff's office pulled plaintiff aside and told her that Sheriff McMillan had been a little intoxicated at the function and was "just feeling very good," or words to that effect.  Plaintiff was humiliated by the incident and heard several comments from other deputies about the Sheriff's behavior with plaintiff and other female deputies.

(12)    On March 10, 2004, plaintiff was working midnight shift when Sheriff McMillan stayed late at work one evening.  Plaintiff could not endure the harassment and hostile environment any longer and had placed an application with another employer.  Sheriff McMillan apparently learned that plaintiff planned to leave when a background investigator contacted the Sheriff's office.  At about 10:00 p.m. that evening, the Sheriff asked to speak with plaintiff in the jail conference room.  Sheriff McMillan told plaintiff she had a "wonderful career" ahead of her in his department if she would just "put her time in" or words to that effect.  As the conversation continued, Sheriff McMillan told plaintiff that if she "broke up" with her boyfriend, then she would be able to "go places" with the Sheriff's office.  The Sheriff tried to convince plaintiff to reconsider resigning and told her she was a good worker and very intelligent; stated repeatedly that plaintiff was "a very attractive young woman," or words to that effect; told her how good her legs looked when she had worn a skirt at the Western Regional Jail Association dinner in October; told her that he liked her hair; and stated that if he "were a few years younger, you would be dating me instead of G---," or words to that effect.  Plaintiff tried to deflect the conversation and reminded the Sheriff that he was married.  Toward the end of the conversation, the Sheriff asked for a hug.  As plaintiff stood up, the Sheriff pulled her down unto his lap to give her a hug.  The Sheriff then told plaintiff that he wanted a kiss.  When plaintiff gave the Sheriff a

peck on the cheek as requested, he told her that "wasn't a real kiss," or words to that effect. Plaintiff fled the conference room and hid in a bathroom until the Sheriff was gone and cried. Plaintiff turned in her two-week notice on March 19, 2004.

(13)    Plaintiff thereafter filed a charge of discrimination with the Equal Employment Opportunity Commission, which documentation contains further details.

(14)    Plaintiff resigned her employment as a result of the continuing pattern of sexual harassment and the maintenance of a hostile and offensive work environment.

## COUNT I: CLAIM FOR SEX DISCRIMINATION AND SEXUAL HARASSMENT AND CONSTRUCTIVE DISCHARGE

(15)    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

(16)    At all times material hereto, defendant had an obligation to maintain a work environment that was not charged with sexual harassment and discrimination and hostile to plaintiff and other women.

(17)    Defendant violated federal law by permitting a work environment to exist that was sexually charged and hostile and offensive to plaintiff and other women and by constructively discharging plaintiff.

(18)    As a direct and proximate result of defendant's actions, plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(19)    At all times material hereto, defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of the plaintiff so as to support an award of liquidated and/or punitive damages.

(20)    The above-described acts by the defendant constitute sexual harassment and sex discrimination and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq*

## COUNT II: CLAIM FOR ASSAULT AND BATTERY

(21)     Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

(22)     Defendant's inappropriate and unwanted touching and related conduct constitutes assault and battery in violation of Virginia common law.

(23)     As a direct and proximate result of defendant's conduct, plaintiff has suffered and will continue to suffer pecuniary loss, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(24)     Further, defendant acted with actual malice toward plaintiff or with reckless disregard of the protected rights of the plaintiff so as to support an award of punitive damages.

WHEREFORE, Plaintiff Lespia J. King prays for judgment against George M. McMillan, Sheriff, Roanoke City Sheriff's Office and for equitable relief, compensatory, liquidated and punitive damages, together with prejudgment interest from the date of termination of plaintiff's employment, and for costs and attorney's fees, and for such other and further relief as may be just and equitable.

Trial by jury is demanded.

Respectfully Submitted,

LESPIA J. KING

By /s/ Terry N. Grimes
           Of Counsel

Terry N. Grimes, Esquire (VSB#24127)
FRANKLIN COMMONS
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
(540) 982-3711
(540) 345-6572 *Facsimile*
Counsel for Plaintiff

KingLespia.Complaint