UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

Roanoke Division

LESPIA J. KING,

    Plaintiff,

v.                                 Civil Action No. 7:05cv00521

GEORGE M. McMILLAN, SHERIFF

    Defendant.

## Brief In Support Of
## Motion to Dismiss

The defendant, the Honorable Octavia L. Johnson("Sheriff Johnson"), has moved the Court to dismiss this case against her for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b)(6). In this brief, she shows why the Court should grant her motion.

## Proceedings

The plaintiff in this case served as a deputy sheriff of the City of Roanoke under Sheriff George M. McMillan. In this case, she sues Sheriff McMillan for sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. She has also filed a pendant state law claim.

Sheriff McMillan was defeated in the November, 2005, general election by Sheriff Johnson. Sheriff Johnson took office on January 1, 2006. April 27, 2006, the Court ordered that Sheriff Johnson "is substituted in her official capacity as Sheriff of the City of Roanoke for former Sheriff George M. McMillan in his official capacity." The

Court ordered the substitution pursuant to F.R.Civ.P. 25(d). The substitution only applies to the plaintiff's Title VII claims, and not to the pendant state law claims.

Sheriff Johnson received a copy of the Order of substitution and the complaint on May 1, 2006.

## Facts Alleged in the Complaint

The Complaint alleges the following facts, which are assumed as true for purposes of this motion only:

The plaintiff served as a deputy under Sheriff McMillan. Complaint ¶ 6. From January 2003 until March 2004, McMillan apparently became sexually interested in the plaintiff. During this time, he committed the following acts of sexual harassment:

- He touched her waist at the firing range, ostensibly to help her put on a holster. Complaint ¶ 7.

- He embraced her and tried to put his hands on her buttocks. Complaint ¶ 8.

- He quizzed her about her personal life, told her she needed to make a choice between him and another man, told her she was special and that he liked her hair, and asked her to sit on his lap and kiss him. Complaint ¶ 9.

- At a conference, He tried to kiss her and held her hip and buttocks. Complaint ¶ 10.

- He again tried to convince her to break up with the other man, told her she had a potentially good career as a deputy sheriff, told her she was attractive, asked her for a hug, pulled her into his lap, and asked for a kiss. Complaint ¶ 12.

2

The plaintiff says that McMillan's conduct caused her emotional trauma, and led to her resignation. Complaint ¶¶ 14, 18.

The plaintiff does not mention Sheriff Johnson in the Complaint.

## Argument

### A.

### The Plaintiff Did Not Sue McMillan in his Official Capacity.

Nothing in the suit indicates that the plaintiff sued McMillan in his official capacity. Since the suit is against McMillan as an individual, Sheriff Johnson should not be substituted in her official capacity for the former Sheriff.

Of course, the primary indication that the Sheriff is sued only in his individual capacity is that the Complaint does not use the words "official capacity." Typically, suits against government officers in the official capacity say exactly that. E. g. *Express Carwash of Charlottesville v. City of Charlottesville, Gary O'Connell, City Manager, sued in his official capacity, Judith Mueller, Director of Public Works, sued in her official capacity, J.G. Palmborg, Public Utilities Manager, sued in his official capacity, et al.,* 320 F. Supp. 2d 466 (W.D. Va. 2004).

Unlike the instant case, official capacity suits also typically seek relief of an institutional nature. Official capacity suits are in reality suits against the governmental agency for which the named defendant works. "Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an *agent* . . . ." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982)(emphasis added). Here, there is no allegation that former Sheriff McMillan is an "agent" of

3

anything. Indeed, as shown below, a Virginia Sheriff is the archetypal principal; his office does not exist without him.

As this Court has observed, in official capacity suits, the real party in interest is the government, not the individual. The named party is incidental to the true gravamen of the suit. "In official capacity suits against state officials, the individual officials are only nominal defendants." *HCMF Corp. v. Gilmore,* 26 F. Supp. 2d 873, 878 (W.D. Va. 1998). In individual capacity suits, the plaintiff seeks recovery against the individual for actions taken—albeit under color of state law—as an individual. Thus, the individual's assets will typically satisfy any judgment the plaintiff secures. In contrast, in official capacity suits, the public funds are to be the source to satisfy any judgment.

> Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets.

*Andrews v. Daw,* 201 F.3d 521, 525 (4th Cir. 2000). Applying these principals here, it is clear that the plaintiff has sued McMillan in his personal capacity.

First, McMillan is hardly a "nominal" party to the litigation. Indeed, the complaint focuses exclusively on his conduct. Indeed, as to the assault and battery claim, the Court has not substituted Johnson as an official capacity defendant. More significantly, the conduct for which the plaintiff sues McMillan is distinctly individual conduct. If the complaint is believed, it leads only to the conclusion that McMillan has a crush on the plaintiff. It has nothing to do with his being the Sheriff of Roanoke. Indeed, the same conduct that gives rise to the Title VII claim also gives rise to the pendant state law claim—a claim that the Court has deemed an individual capacity claim.

In short, the plaintiff has made no attempt to sue McMillan in his official capacity. Since Rule 25 allows substitution only when a party is sued in his official capacity,[1] Sheriff Johnson should not be a defendant in the case.

**B.**

**Sheriff Johnson Is Not McMillan's Successor
Within the Meaning of Rule 25(d).**

Sheriff Johnson is not Sheriff McMillan's successor as Sheriff of Roanoke. Rather, her service as Sheriff begins an entire new office, unrelated to McMillan's regime. Rule 25(d) allows the substitution of a successor officer for a government official who has been sued in his official capacity. Since Sheriff Johnson does not succeed McMillan in anything other than time, she is not a successor within the meaning of Rule 25.

Virginia's constitutional offices, one of which is the sheriff, are singular entities. Virginia law does not create a "Sheriff's Office" or "Sheriff's Department." Rather, the people in each locality elect a sheriff, who appoints deputies. Va. Code § 15.2-1600. Each sheriff must appoint his own deputies, none of whom can serve before the start of the Sheriff's term. Va. Code § 15.2-1603. Every time the sheriff is reelected, the sheriff must take a new oath, and must reappoint his deputies.

Each term of sheriff is legally independent of any other term of any other sheriff. In essence, each term starts a new administration. A review of the law dealing with removal of sheriffs demonstrates this principle. Citizens in Virginia can petition the local

---

[1] In pertinent part, Rule 25 provides: "When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."

court to remove a sheriff, but the removal can only occur because of incident that occur in the sheriff's current term. *Barbee v. Murphy*, 149 Va. 406, 413, 141 S.E. 237, ___(1928). Events before the current term "may not serve as the *basis* for removing an officer during a subsequent term." 1989 VA Attorney General's Opinion 221, 222(Copy attached). The logic is simple: each sheriff's term is a legal independent entity.

The principle that each Sheriff's term stands alone applies in a variety of other contexts. For instance, a sheriff may not enter a contract that binds the next sheriff to take office. 2002 Virginia Attorney General's Opinions, 151, 153-54(copy attached). In a different context, a sheriff who, by virtue of his office, serves as administrator of a decedent's estate, is not replaced by the next sheriff. Rather, he must remain administrator of the estate. 1971-72 Virginia Attorney General's Opinions, 360A, 361 (1971)(copy attached).

Most notably, when a sheriff ceases to serve, his deputies lose their positions. The next sheriff must appoint new deputies, for the previous sheriff's appointees have lost all their powers. *Ramey v. Harber,* 589 F.2d 753, 754-755 (4th Cir. 1978). As this Court has held, "Under Virginia law, the term of a deputy sheriff expires with the term of the sheriff and to continue in office the deputy must be reappointed." *U.S. v. Gregory,* 726 F. Supp. 640, 645 (W.D. Va. 1988). This rule of law is so draconian that the Virginia General Assembly had to pass a statute providing that deputy sheriffs continue to have police powers in the event of the death of the sheriff. Otherwise, there would simply be no law enforcement officers in some localities. Va. Code § 15.2-1617.

Rule 25(d) deals with situations that have institutional continuity—continuity lacking between Virginia sheriffs who follow each other in office. By its terms, the rule

6

covers only official capacity suits. "The real party in interest in an official-capacity suit is the entity represented, not the individual officeholder." *Moore's Federal Practice*, 3d, § 25.41[2]. Such suits arise from an unlawful policy of an agency, not from the maverick actions of a capricious individual. Wright, Miller & Kane, *Federal Practice and Procedure*, 2d § 1960.

The Advisory Committee's comments to the Rule make clear that it does not apply in circumstances such as those present here:

> The amended rule will apply to all actions brought by public officers for the government, and to any action brought in form against a named officer, but intrinsically against the government or the office or the incumbent thereof whoever he may be from time to time during the action. Thus the amended rule will apply to actions against officers to compel performance of official duties or to obtain judicial review of their orders. It will also apply to actions to prevent officers from acting in excess of their authority or under authority not validly conferred . . .or from enforcing unconstitutional enactments . . . .

In short, the Rule applies to challenge on-going policies by an institution. "In general it will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than one who has lost that status and power through ceasing to hold office." Id. The rule exists to correct continuing abuses of power. E g. *Lankford v. Gelston,* 364 F. 2d 1997, 205 n.9(4th Cir. 1966)(suit to stop illegal municipal practices).

The Rule makes clear that substitution of parties does not automatically occur when the suit seeks damages from the offending official himself, rather than from the government fisc. The Comments state:

> Excluded from the operation of the amended rule will be the relatively infrequent actions which are directed to securing money judgments against the named officers enforceable against their personal assets; in these cases Rule 25(a)(1), not Rule 25(d), applies to the question of substitution.

7

> Examples are actions against officers seeking to make them pay damages out of their own pockets for defamatory utterances or other misconduct in some way related to the office . . . .

This comment makes clear that the Rule does not reach the instant suit. Here, McMillan sexually harassed the plaintiff. That the harassment occurred in sites controlled by the Sheriff is simply an accident of geography, not an outgrowth of policy. Just as clearly, the plaintiff seeks relief against McMillan from his personal assets. In these circumstances, substitution of Sheriff Johnson is inappropriate.

In short, Sheriff Johnson's administration is a completely separate entity from McMillan's. There is no continuity of operation between the two, and Sheriff Johnson is not McMillan's successor. Moreover, there is no continuity of policy between the two that would make substitution appropriate. Rule 25 simply does not reach cases such as the instant one.

## C.

### As to Sheriff Johnson
### The Claims in the Complaint Are Moot.

Even if Sheriff Johnson is McMillan's "successor" under Rule 25(d), the case cannot continue against her, because it is moot.

Whatever misconduct McMillan may have committed, Sheriff Johnson was not a party to it, and does not continue it. The gist of this suit is that McMillan wanted to have a sexual encounter with the plaintiff and wooed her in various ways. Sheriff Johnson, herself a woman, obviously has not continued this activity. Indeed, the Complaint and the other papers filed with this Court do not—and cannot—suggest that Sheriff Johnson has done anything wrong at all.

When a successor takes office and discontinues the unlawful policies of his predecessor, the case becomes moot. Rule 25(d) "will not keep alive an otherwise moot controversy." *Network Project v. Corporation for Public Broadcasting*, 561 F. 2d 963, 966(DC Cir. 1977). Mootness is particularly likely to stall a case where the plaintiff does not allege any wrongful conduct by the successor officer. *Spomer v. Littleton*, 414 U.S. 514, 522-523(1974).

The fact that a suit is determined to be an official capacity case is irrelevant to the mootness question, where the conduct of which the plaintiff complains is, as here, personally motivated.

> [W]here the conduct challenged is personal to the original named defendant, even though he was sued in his official capacity, a request for prospective injunctive relief is mooted when the defendant resigns.

*National Treasury Employees' Union v. Campbell*, 654 F. 2d 874, 788(D.C.Cir. 1981). Here McMillan's conduct is quintessentially personal: it represented a desire to begin a sexual relationship with the plaintiff.

To determine whether the case is moot, the Court must look at the allegations in the pleadings. "[M]ootness must be determined solely by reference to the allegations of the complaining party." *Network Project v. Corporation for Public Broadcasting*, 561 F. 2d 963, 968, n. 25(DC Cir. 1977). "[T]o determine whether respondents have a live controversy with [appellant] Spomer, we must look to the charges *they* press." *Spomer v. Littleton,* 414 U.S. 514, 523 n.10 (1974)(emphasis in original). Here, the pleadings do not suggest any controversy between the plaintiff and Sheriff Johnson.

The plaintiff has the burden to allege and prove an existing live controversy between herself and Sheriff Johnson. Wright, Miller, and Kane, *Federal Practice and*

*Procedure* 2d, § 1960. In the context of this case, the plaintiff must demonstrate some contact between the two, and a continuation of McMillan's wrongful policies. Obviously, the plaintiff cannot make these allegations, and so the case must fail for mootness.

**D.**

**Conclusion.**

For the reasons stated, Sheriff Johnson respectfully requests the Court to dismiss this case against her.

The Honorable Octavia L. Johnson

_/s/ John A. Gibney, Jr._____
By Counsel

John A. Gibney, Jr. VSB 15754
Thompson & McMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23210
804/649-7545
Fax 804/780-1813

Certificate

I certify that on May 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Terry N. Grimes, Esquire, Terry M. Grimes PC, 320 Elm Avenue SW, Roanoke, VA 24016; and Elizabeth Kay Dillon, Esquire, Guynn Memmer & Dillon PC, P.O. Box 20788, Roanoke, VA 20418.

____/s/ John A. Gibney, Jr._____