UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

Roanoke Division

LESPIA J. KING,

    Plaintiff,

v.                                          Civil Action No. 7:05cv00521

GEORGE M. McMILLAN, SHERIFF

    Defendant.

**Brief in Support Of
<u>Motion for Summary Judgment</u>**

The defendant, the Honorable Octavia L. Johnson, Sheriff of the City of Roanoke("Sheriff Johnson"), has moved the Court to grant summary judgment in her behalf. F.R.C.P. 56(b). In support of her motion she submits this brief with attached exhibits.

**Proceedings**

In this case, the plaintiff sued former Sheriff George M. McMillan for sexual harassment, sexual discrimination, and constructive discharge under Title VII. Complaint ¶ 20. He also asserted a state law claim of assault and battery claim against McMillan under the Court's supplemental jurisdiction.

The plaintiff is a former deputy sheriff of the City of Roanoke. At the time suit was filed, McMillan served as Sheriff of the City of Roanoke. During the pendency of the case, Sheriff McMillan lost an election and lost his job as sheriff. At that time, the Court substituted Sheriff Johnson in her official capacity as a defendant in the Title VII claim. The assault and battery claim continues against McMillan. Order, April 6, 2006.

Sheriff Johnson is only a defendant as the holder of her office, which the Court has held is the plaintiff's "employer for purposes of Title VII." Memorandum Opinion, July 28, 2006, p. 4.

The plaintiff attempted to join a number of other women as plaintiffs. The Court denied the motion to intervene, and the case was appealed to the United States Supreme Court. During the appeal, the litigation was stayed in this Court. The Supreme Court recently upheld this Court's ruling on intervention, and the case is now ripe for summary judgment.

**Facts**

Viewed in the light most favorable to the plaintiff, *Thurston v. American Press, LLC,* 497 F. Supp. 2d 778, 781 (W.D. Va. 2007), the facts are as follows[1]:

1. The plaintiff worked as a deputy sheriff in the City of Roanoke. She was appointed by Sheriff McMillan as deputy sheriff in 2000, and she resigned in March, 2004. Complaint ¶ 6.

2. She complains of acts of sexual harassment that occurred between January, 2003, and March, 2004. Complaint ¶ 6.

3. At those times, Sheriff McMillan was Sheriff of the City of Roanoke. Complaint ¶ 5.

4. Sheriff McMillan had just over 200 employees. McMillan Dep. p. 45.[2]

5. The plaintiff worked as a correctional officer or jailor. King Dep. p. 14.

6. The plaintiff felt uncomfortable around McMillan. King Dep. pp. 23-24.

---

[1] The defendants dispute many of these facts, but they are taken as true only for purposes of this motion.
[2] Excerpts from the plaintiff's deposition and Sheriff McMillan's deposition are attached as, respectively, Exhibits 1 and 2 to this brief.

7. The plaintiff did not see McMillan often. King Dep. p. 28. She only saw him every six weeks or two months, and she experienced discomfort around him once every other month. King Dep. p. 30.

8. She was uncomfortable because he sometimes tried to hug her and was physically too close to her. He made comments about her attractiveness, how she ought to date him, and how she should not date other law enforcement officers. King Dep. p. 24.

9. His discussions of her dating habits lasted under five minutes. King Dep. p. 31.

10. She never told him that she did not want to hug him. King Dep. p. 32.

11. McMillan habitually hugged all the female deputies when he saw them. King Dep. p. 78.

12. She can recall four specific incidents of what she deems harassment.

**First Event of Alleged Harassment**

13. The first incident occurred in her first month of employment. King Dep. p. 27. She began her employment in 2000. Complaint ¶6.

14. At that time, she was on the shooting range attempting to practice firing her pistol. She had trouble with her gun belt. King Dep. p. 26.

15. She testified that it was obvious to anyone that she was having trouble with her gun belt. King Dep. p. 26.

16. Sheriff McMillan helped her adjust her gun belt and the "belt keepers." King Dep. pp. 24-25.

17. She found this awkward. King Dep. p. 25.

18. She testified that it was awkward because "I don't like people in my space, and particularly having your boss notice that you were having trouble and need to rescue you was also uncomfortable." King Dep. p. 26.

19. She did not verbally advise him that he was too close to her or that his touching her bothered her. King Dep. p. 28.

**Second Alleged Event of Harassment**

20. In January, 2003, the plaintiff met with Sheriff McMillan to request a shift change because she did not get along with her coworkers on her shift. King Dep. pp. 39-49.

21. Their meeting occurred in his office. King Dep. p. 40.

22. The meeting lasted 45 minutes. King Dep. p. 43.

23. The plaintiff cried about the conflict she was having with the other deputies on her shift. McMillan Dep. pp. 203-04.

24. McMillan suggested that she should tough it out and she would eventually get a transfer. King Dep. p. 40.

25. McMillan touched her knee about six times during their discussion. King Dep. p. 43.

26. He also told her that she would have a position in Courts if she chose him over her boyfriend at the time. King Dep. pp. 40-41.

27. McMillan told her that relationship with her boyfriend (also a deputy sheriff) was leading to talk in the jail about them, but that she could continue to join the boyfriend for lunch. King Dep. pp. 41-42.

28. At the end of the meeting, he asked for a hug and a kiss. She resisted, but eventually hugged him and tried to give him a peck on the cheek. He turned his head and their lips touched. King Dep. pp 43-45.

29. She then left his office and never went back to the office in the remaining year and a half of her employment. King Dep. pp. 45, 48.

30. She received the transfer to a different shift. King Dep. p. 49.

31. No other incidents occurred between January and October, 2003. King Dep. p. 49.

**Third Alleged Event of Harassment**

32. The third event of harassment occurred at a social event held at the Western Regional Jail Association meeting at the Clarion Hotel in Roanoke. Complaint ¶ 10.

33. Sheriff McMillan asked her to hug him in a room full of people. King Dep. pp. 49-50.

34. McMillan said he was going to hug her until her boyfriend, who was also present, saw them and became jealous. King Dep. p. 50.

35. He put his hand on her hip. King Dep. p. 50.

36. Apparently her boyfriend did not see them, or at least did not get jealous. King Dep. p. 50.

37. She walked away from McMillan. King Dep. pp. 50-51.

38. She did not complain about McMillan's conduct to anyone. King Dep. p. 51.

**Fourth Alleged Event of Harassment**

39. In the late fall or early winter of 2003, she had unsuccessfully sought promotions in the office. King Dep. pp. 90-91.

40. On January 5, 2004, 2004, the plaintiff applied for employment with the Roanoke County Sheriff. King Dep. p. 92, King Dep. Exhibit 4.

41. The Sheriff's Office used a promotion board for the promotional process, and she did poorly on the oral portion of the examination. King Dep. pp. 89-90.

42. After she did not receive a promotion, she applied for the job with the Roanoke County Sheriff. King Dep. p. 92.

43. McMillan learned that she had applied elsewhere, and on March 10, 2004, met with her to discuss her application. The meeting occurred in the jail conference room. King Dep. p. 56.

44. McMillan tried to talk her out of quitting. King Dep. p. 59.

45. He also told her that she could go places in the jail. King Dep. pp. 59-60.

46. McMillan told her that she could have a place in courts if she ended her relationship with a fellow deputy. King Dep. pp. 59-60.

47. McMillan told her she had looked good at the Western Regional Jail Conference, and that she had nice legs. King Dep. pp. 60-61.

48. She told him that career opportunities were better with the County and that she would not have to work a rotating shift there. King Dep. p. 60.

49. McMillan then wished her well. King Dep. p. 61.

50. McMillan pulled her into his lap for a hug. King Dep. p. 61.

51. He asked for a kiss, and she tried to peck his cheek but he turned his head and their lips touched. King Dep. p. 62.

52. She did not report this incident to anyone until she filed her EEOC charge. King Dep. p. 65.

\* \* \*

53. King admits that Sheriff Johnson had no role in any harassment of her. King Dep. pp. 116-17.

54. Sheriff McMillan had a policy against sexual harassment. McMillan Dep. Exhibit 7.

55. The policy provides as follows:

> SEXUAL HARASSMENT: Department members are prohibited from engaging in sexual harassment. Sexual harassment is unacceptable conduct in the work place and will not be tolerated. Department members who violate there standards of conduct will be subject to disciplinary action which include possible dismissal. The Roanoke City Sheriff's Office shall comply with the policy and procedures governing the conduct of City Employees found in City Personal (sic) Operating Procedure #19 – Sexual Harassment.

McMillan Dep. Exhibit 7.

56. The Sheriff's policy refers to and incorporates Personnel Operating Procedure 19, dealing with sexual harassment. The procedure defines sexual harassment as follows:

> Sexual harassment is a violation of this policy. The following conduct may constitute sexual harassment or discrimination: unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an

individual's work performance or creating an intimidating, hostile, or offensive working environment.

Examples of conduct that may constitute sexual harassment include, but are not limited to: unwelcome touching; persistent requests for dates or other social or sexual activities; vulgar and/or sexual jokes, comments or stories; comments about others' bodies.

Exhibit 3 to this brief.

57. The City's harassment policy forbids harassment. Exhibit 3.

58. The City's harassment policy requires immediate reporting of harassment: "Reports of harassing conduct shall be made immediately to permit a prompt investigation and prompt corrective action." The "employee shall immediately report the conduct to his/her supervisor, department manager, or directly to the Director of Human Resources." Exhibit 3.

59. By contract, Sheriff McMillan agreed the he and his office would comply with all City personnel regulations. Exhibit 4 to this brief.

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52(1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. After the movant makes the required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324.

Applying this standard in this case, Sheriff Johnson is entitled to summary judgment.

## Argument

### I.

### The Plaintiff Cannot Recover the Damages She Seeks.

In this case, the plaintiff seeks punitive damages. The law is clear, however, that she cannot recover punitive damages against a governmental body. 42 U.S.C. §1981a(b)(1). Here, Sheriff Johnson is a defendant solely as the representative of the plaintiff's employer for Title VII purposes, the "Office of the Sheriff for the City of Roanoke." Memorandum Opinion, July 28, 2006, p. 5. Thus, the plaintiff is not entitled to recover punitive damages, and the Court should enter summary judgment against the plaintiff on her claim for punitive damages against Sheriff Johnson.

In addition, to the extent she seeks damages in excess of $200,000, she cannot make such a recovery. The Roanoke Sheriff has just over 200 employees. McMillan Dep. p. 45. 42 U.S.C. § 1981a(b)(3)(B) imposes a statutory cap of $200,000 on damages against employers with between 200 and 500 employees. Thus, her damage recovery is limited to $200,000, and the Court should enter partial summary judgment in favor of

Sheriff Johnson to the extent the plaintiff makes a claim of damages over the statutory cap.

## II.

### The Plaintiff Cannot Prove a Claim of Gender-based Discrimination.

This case presents a sexual harassment claim. Nevertheless, the plaintiff seeks damages for "sex discrimination," in addition to harassment.[3] Complaint ¶ 20. She cannot make out a claim of discrimination by disparate treatment.

To prevail on a claim of gender-based discrimination, the plaintiff must prove that she is a member of a protected class, that she suffered an adverse employment action, that she performing satisfactorily and was qualified for the job, and that racial discrimination was the cause of the adverse employment action. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760 (4th Cir. 1998); *Andrezyski v. Kmart Corp.,* 358 F. Supp. 2d 511, 514-515 (W.D. Va. 2005). As one court has summarized the elements:

> In the context of a Title VII case, damages may only be awarded to an employee when it is alleged that the employer took an adverse employment action against the employee for a discriminatory reason.

*Chaplin v. Du Pont Advance Fiber Systems,* 293 F. Supp. 2d 622, 626 (E.D. Va. 2003). Here, the plaintiff cannot establish the elements of a traditional discrimination claim.

### A. No Adverse Employment Action.

The plaintiff has no evidence of an adverse employment action. Her employment status did not change for the worse.

---

[3] Some cases treat sexual harassment as a form of sexual discrimination. *E.g. Spencer v. General Elec. Co.,* 894 F.2d 651, 658 (4th Cir. 1990). The plaintiff makes separate claims for each. Complaint ¶ 20. It is assumed, therefore, that her "discrimination" claim is a claim for relief based on disparate treatment.

> [W]hether the claim is discrimination based on race, religion, or national origin, to qualify as an actionable injury, a plaintiff must allege that his employment status suffered.

*Chaplin v. Du Pont Advance Fiber Systems,* 293 F. Supp. 2d 622, 627 (E.D. Va. 2003). Here, the plaintiff's employment status did not "suffer," so she cannot make out a traditional claim of discrimination.

There is nothing to suggest that Sheriff McMillan demoted her, fired her, reduced her pay, or gave her adverse assignments. In fact, the evidence in the case is to the contrary. The plaintiff appealed to Sheriff McMillan for a transfer to a preferred shift, and he provided it to her. Although she applied for a promotion, it was a promotional board, not McMillan who scored her so poorly that she did not qualify for the promotion. She cannot point to anything McMillan did to harm her employment status, and, therefore, cannot establish an adverse employment action.

### B. Discriminatory Intent

Nor can the plaintiff establish the intent element of a traditional discrimination claim. The employer must take action against the employee for a "discriminatory reason." *Chaplin v. Du Pont Advance Fiber Systems,* 293 F. Supp. 2d 622, 626 (E.D. Va. 2003). In other words, the plaintiff must show that she suffered an adverse employment action *because she is a woman.*

Again, she cannot meet this standard. Typically, an employee meets this burden by showing that she "was replaced by someone not a member of the protected class." *Andrezyski v. Kmart Corp.,* 358 F. Supp. 2d 511, 514-515 (W.D. Va. 2005). Other methods of proof are available, but the plaintiff must always prove that an adverse action happened to her because of intent to discriminate on the basis of sex." *Brinkley-Obu v.*

11

Case 7:05-cv-00521-SGW-mfu   Document 131   Filed 12/14/07   Page 11 of 20   Pageid#: 774

*Hughes Training, Inc.,* 36 F.3d 336, 343-344 (4th Cir. 1994)(internal quotation marks omitted).

Here, there is no evidence that Sheriff McMillan took any action against her because of her gender. As noted above, there are only two possible employment actions in the case. In the first, McMillan honored her request for a transfer. In the second, she was denied a promotion after an "oral board' in which she admittedly performed poorly, and which was conducted by a panel of people which did not include Sheriff McMillan. There is simply nothing on which to assume that Sheriff McMillan engaged in class-based animus, and the discrimination claim must fail.

### III.

### The Plaintiff Cannot Prevail on her Sexual Harassment Claim.

The gravamen of the plaintiff's case is that she believes she was sexually harassed by Sheriff McMillan, and that his harassment created a hostile work environment.

Sexual harassment consists of conduct that is unwelcome, that is based on the plaintiff's sex, that is so "severe" or "pervasive" as to alter the plaintiff's conditions of employment, and that is imputable to the employer. *Anderson v. G.D.C., Inc.,* 281 F.3d 452, 458 (4th Cir. 2002). As this Court has stated:

> A hostile work environment claim under Title VII requires plaintiff to prove:
> (1) That the conduct in question was unwelcome, (2) That the harassment was based on sex, (3) That the harassment was sufficiently pervasive or severe to create an abusive working environment, and (4) That some basis exists for imputing liability to the employer.

*Troutt v. Charcoal Steak House, Inc.,* 835 F. Supp. 899, 902 (W.D. Va. 1993). Here, the plaintiff cannot establish the third element, that the conduct was so pervasive or severe as to create an environment that cannot reasonably be tolerated.

## A. No Pervasive or Severe Harassment.

The determination whether an environment is marked by severe or pervasive harassment requires an examination of the totality of the working environment. *Harris v. Forklift Systems, Inc*, 510 U.S. 17, 23 (1993). The conduct must be egregious; simple teasing, comments made in bad taste, or isolated incidents do not amount to discriminatory changes in the works place. The conduct must be so bad that it changes the terms and conditions of employment. *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).

The plaintiff must prove that the environment is objectively abusive. "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Harris v. Forklift*, 510 U.S. 17, 21-22 (1993). To be actionable, the plaintiff must show an accumulation of instances of harassment that change the terms and conditions of the job. *Jordan v. Alternative Resources Corp.,* 458 F.3d 332, 339 (4th Cir. 2006). To determine whether a workplace crosses the line, the Court must examine the entire environment. Typically, the courts list five factors to be considered:

> [W]e must look at all the circumstances to determine whether a work environment is hostile or abusive, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted.

*Conner v. Schrader-Bridgeport Intern., Inc.,* 227 F.3d 179, 192-193 (4th Cir. 2000). Teasing, offhand comments, and isolated incidents do not equal a hostile environment. *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). Title VII imposes a "high threshold of actionable harm." *E.E.O.C. v. R&R Ventures,* 244 F.3d 334, 339 (4th Cir. 2001).

Examining the five factors outlined in *Conner*, *supra,* it is clear that Sheriff McMillan's dealings with the plaintiff do not amount to harassment that caused a hostile environment. First, the objectionable interactions were infrequent. They did not begin until January 2003, by which time she had been a deputy for two and one half years. Complaint ¶ 6. The last event occurred in March, 2004, so the misconduct lasted only 15 months. Objectionable interaction did not occur frequently—at their most frequent, the events occurred once every two months. *There were no incidents in ten of the fifteen months—between January and October 2003.* In fact, the plaintiff can only remember four specific incidents.

As to the second *Conner* factor, none of the events described by the plaintiff are severe. With one exception, they occurred in private, so they did not embarrass the plaintiff. In some of the events, he complimented her on her appearance, he hugged her and asked her to drop her boyfriend, and on two occasions he stole kisses from her.

Two of the events seem completely innocent. In their first encounter, he helped her adjust her gun belt, which she admitted was causing her trouble. In the one public event, he put his arm around her in a dinner gathering and suggested that he and she could make her boyfriend jealous.

Perhaps the plaintiff did not enjoy this conduct from an older man, but it is certainly not so severe as to change the terms of employment.

Interestingly, her testimony reveals none of the classic elements of a hostile environment. McMillan did not curse or use vulgar language. He did not ask her to have sex with him. He did not touch or mention her breasts. He did not brag about his masculine prowess. He did not ask her about details of her sex life. He did not go out of

14
Case 7:05-cv-00521-SGW-mfu   Document 131   Filed 12/14/07   Page 14 of 20   Pageid#: 777


his way to corner her. He did not send notes to her. He did not ask her to take trips with him, or even to go to lunch with him. If Sheriff McMillan was wooing the plaintiff, his attempts were remarkably mundane, and his persistence left much to be desired.

While there is no magic formula for what amounts to harassment, other cases make clear how stringently Title VII imposes a "high threshold of actionable harm." *E.E.O.C. v. R&R Ventures,* 244 F.3d 334, 339 (4th Cir. 2001). By comparison, the other cases show how mild Sheriff McMillan's conduct is. In *Ocheltree v. Scollon Productions, Inc.,* 335 F.3d 325, 328-329 (4th Cir. 2003), the employer caused the employee to be subjected to an environment in which she received daily doses "of discussion or conduct that was sex based or sexist." Her co-workers and supervisor simulated sex with a mannequin, sang sexual arias to her, showed her photographs of pierced male genitalia, asked each other for acts of fellatio, discussed their sexual exploits with their wives and girlfriends, talked about where and how they ejaculated, and said how they enjoyed pedophilia. *Id*.

In *E.E.O.C. v. R&R Ventures,* 244 F.3d 334 (4th Cir. 2001), the court found the following conduct actionable:

> In this case, Wheeler [a supervisor] allegedly described his sex life and discussed sexual positions with Scott and Potter [two employees]. He regularly asked Scott if she liked to be spanked, if she had "gotten laid," and complained about his lack of sexual prowess. On almost a daily basis he commented on Scott's buttocks and breasts, asked Potter what size pants she wore, and made inappropriate sexual remarks. He made these comments in front of other employees and customers. . . .

*Id.* at 340. Significantly, in both *R&R* and *Ocheltree*, supervisors allowed employees to face daily streams of utter vulgarity, far worse than anything present in this case.

15

Turning to the third factor in the *Conner* test, McMillan's conduct was not physically threatening or humiliating. While McMillan did touch her on a few occasions, he primarily hugged her—something he did with all the female employees. Twice they kissed, and there is no suggestion that their lips did more than brush against each other as she tried to peck his cheek.

Turning to the fourth element listed in *Conner*, the plaintiff cannot show that the conduct affected her work. Indeed, she seems to have done well as a deputy. She easily secured a job in another department when she left. She does not complain that she received bad evaluations, or was unable to do her job because of McMillan.

Finally, the record is devoid of psychological harm. Indeed, the plaintiff has not even identified an expert to testify about psychological injury.

In sum, the plaintiff does not prove a hostile environment. Perhaps Sheriff McMillan was thoughtless, but he did not turn the workplace into a horror that changes the terms and conditions of employment. She has not met the "high threshold of actionable harm" required for a Title VII claim. *E.E..O.C. v. R&R Ventures,* 244 F.3d 334, 339 (4th Cir. 2001). Accordingly, the Court should grant Sheriff Johnson's motion for summary judgment.

### B. Failure to Utilize Procedure to Prevent Harassment.

In cases such as this one, where the employer takes no tangible employment action toward the employee, the employer may escape liability if the employee did not use an available mechanism to report and escape from harassing conduct. The employer cannot be held liable if it can establish:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff

employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Matvia v. Bald Head Island Management, Inc.,* 259 F.3d 261, 266-267 (4th Cir. 2001)(internal quotations omitted). Here, the evidence shows that the Sheriff had a plan to prevent and correct harassing behavior, and that the plaintiff unreasonably did not avail herself of opportunities to protect herself.

The Sheriff's employment manual, distributed to all employees, forbids sexual harassment. It incorporates the City's harassment policy. This policy contains a comprehensive definition of sexual harassment, and sets forth a mechanism to report harassment. The adoption and distribution of the policy satisfied the first element of the defense. "Distribution of an anti-harassment policy provides compelling proof that the company exercised reasonable care in preventing and promptly correcting sexual harassment." *Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 266 (4th Cir. 2001)(internal quotation marks omitted).

The policy provided that a victim of harassment should draw the misconduct to the attention of her supervisor, her department head, or the City's director of human resources. The plaintiff went to none of these resources. Indeed, she did not even ask McMillan to stop. Her inaction proves the second prong of the affirmative defense:

> According to circuit precedent, evidence that the plaintiff failed to utilize the company's complaint procedure will normally suffice to satisfy [the employer's] burden under the second element of the defense.

*Matvia v. Bald Head Island Management, Inc.,* 259 F.3d 261, 269 (4th Cir. 2001)(internal quotation marks omitted).

17
Case 7:05-cv-00521-SGW-mfu   Document 131   Filed 12/14/07   Page 17 of 20   Pageid#: 780

Since the evidence shows that the plaintiff did not avail herself of a procedure to protect herself from harassment, she cannot recover in this case.

## IV.

## No Constructive Discharge.

The plaintiff cannot establish the elements to support her claim that she suffered a constructive discharge. Constructive discharge occurs when the employer forces the employee to resign by making conditions of employment unbearable. Two elements go into a claim of constructive discharge—intent to force the employee to quit for class-based reasons, and intolerable working conditions:

> To demonstrate constructive discharge in this case, [the employee] must allege and prove two elements: (1) the deliberateness of [the employer's] actions, motivated by racial bias, and (2) the objective intolerability of the working conditions.

*Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 186-187 (4th Cir. 2004). The plaintiff here cannot establish either element.[4]

First, there is no evidence that Sheriff McMillan intended to force her to resign. Indeed, on the last week of her employment, he met with her and tried to persuade her to remain on the job. If the plaintiff is to be believed, Sheriff McMillan took a liking to her, and it is unlikely that he wanted her to resign. "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force the employee to quit."

---

[4] The constructive discharge claim is of no avail to the plaintiff in any event. She does not seek recovery of back wages, because she immediately moved to a higher paying job with Roanoke County's sheriff. Constructive discharge is typically a way for a plaintiff to make a claim for losing her job and its salary despite what appears to be a voluntary resignation. Here, the plaintiff's damages are the same whether she resigned or not.

*Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985)(internal quotation marks omitted). The evidence in this case simply does not establish that Sheriff McMillan wanted the plaintiff to quit.

Nor is McMillan's conduct intolerable. Intolerability is judge by an objective standard:

> Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign. An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.

*Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985)(internal citations and quotation marks omitted). As discussed above in the section of this brief on hostile work environment, Sheriff McMillan's conduct was sporadic and isolated in frequency, and was not of the disgusting nature that exists in many cases. It is hardly intolerable.

The plaintiff cannot establish a claim of constructive discharge, and so the Court should enter summary judgment on behalf of Sheriff Johnson.

## V.

## Conclusion

For the reasons stated, Sheriff Johnson respectfully requests the Court to grant her motion for summary judgment.

The Honorable Octavia L. Johnson

_____/s/_____
By counsel

John A. Gibney, Jr. VSB 15754
Counsel for Defendant Octavia Johnson
ThompsonMcMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23210
804/649-7545
Fax 804/780-1813
jgibney@t-mlaw.com

Certificate

       I certify that on December 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Terry N. Grimes, Esquire, Terry M. Grimes PC, 320 Elm Avenue SW, Roanoke, VA 24016; and Elizabeth Kay Dillon, Esquire, Guynn Memmer & Dillon PC, P.O. Box 20788, Roanoke, VA 20418.

                                                   /s/
                                     John A. Gibney, Jr. VSB 15754
                                     Counsel for Defendant Octavia Johnson
                                     ThompsonMcMullan, P.C.
                                     100 Shockoe Slip
                                     Richmond, Virginia 23210
                                     804/649-7545
                                     Fax 804/780-1813
                                     jgibney@t-mlaw.com