CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 0 8 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LESPIA J. KING, | ) | Civil Action No. 7:05CV00521 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GEORGE M. MCMILLAN, and | ) | By: Samuel G. Wilson |
| OCTAVIA JOHNSON, Sheriff of the | ) | United States District Judge |
| City of Roanoke, | ) | |
|     Defendants. | ) | |

Plaintiff Lespia King brought this case arising from the alleged misconduct of her former boss, former Roanoke City Sheriff George M. McMillan. The two defendants are McMillan and Octavia Johnson in her official capacity as the current Roanoke City Sheriff ("sheriff's office"). The case went to trial and a jury returned a verdict against both defendants. The case is now before the court on defendants' post-trial motions. Defendants contend that this court inappropriately admitted certain evidence, that the verdicts are against the weight of the evidence, and that the damage awards are too high. With the exception of the issue of remittitur, the court considered each issue at, and in some cases before, trial. The court is satisfied that it applied the law correctly to the facts of the case, and will deny the post-trial motions. As to remittitur, however, the court finds that there may be a punitive element to the compensatory damage award for battery, and accordingly grants a hearing on the sole issue of remittitur vis-a-vis McMillan.

I.

In the light most favorable to the plaintiff, the facts, briefly stated, are as follows: beginning in 2000, McMillan, as the chief executive of the Roanoke City Sheriff's Office, sexually harassed King, who was then a Roanoke Sheriff's Deputy, on multiple occasions and maintained a work environment where gender discrimination was severe and pervasive enough to

be unlawfully hostile. According to King, female deputies, including King, were degraded and understood the unspoken rule that to defy McMillan's sexually charged advances was to put one's law enforcement career in jeopardy. King "got the message" about this rule from colleagues and from McMillan himself, although never in so many words. Several incidents involved physical contact with King. On March 10, 2004 McMillan committed battery when he grabbed and held King without her consent.

The jury found the sheriff's office liable for damages under Title VII of the Civil Rights Act, and awarded $50,000 to King on the claim. The jury also found McMillan personally liable for the tort of battery, and awarded King $175,000 in compensatory damages and $100,000 in punitive damages on that claim.

## II.

The sheriff's office and McMillan move for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Each brings several arguments to bear; the thrust, however, is that this court improperly admitted certain evidence or that the evidence was insufficient as a matter of law to establish liability. The court considered each of these issues before and/or during trial, and is convinced upon further review that those decisions were correct and in accordance with the law. Accordingly, the court denies the motions.

The sheriff's office and McMillan argue that this court violated Federal Rule of Evidence 403 by admitting the testimony of other women who worked under or with McMillan, or who applied for work with McMillan. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

2

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (emphasis added.) This court must view "all of the circumstances" in considering a hostile work environment claim, and separate incidents relevant to the work environment must not be disaggregated. Harris v. Forklift Systems, 510 U.S. 17, 23 (1993); Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000). The court is satisfied that the evidence offered by the other women was highly probative of the totality of the circumstances of King's work. Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 110-12 (3d cir. 1999) ("Evidence that women other than the plaintiff were subjected to a hostile work environment clearly meets Rule 401's requirements [regarding relevance] in a number of situations. . . . Moreover, in 403 terms, this evidence is highly probative, hence it is unlikely that any putative prejudice therefrom will be unfair or outweigh its value."); Perry v. Ethan Allen, Inc., 115 F.3d 143, 151-52 (2d Cir. 1997) ("[e]vidence of the harassment of women other than [plaintiff] but not known to [plaintiff], if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment"). The evidence was also probative of whether McMillan's actions were based upon gender. See, e.g. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir. 2008) (noting the admissibility of coworker testimony in a sexual harassment case to prove the defendant's motive, intent or plan to discriminate). See also Sprint/United Management Co. v. Mendelsohn, 128 S.Ct. 1140, 1147 (2008) (holding that evidence of discrimination towards people other than plaintiff may be probative). The court considered the risk of unfair prejudice and found that it did not substantially outweigh the probative value of the evidence. See Mendelsohn, 128 S.Ct. at 1146 (holding that assessment of Rule 403 factors is fundamentally a

3

matter of trial court's fact-based, context-specific judgment). The sheriff's office seeks to disaggregate the experience of employees so completely that virtually no hostile work environment claim where unspoken gender discrimination governs the workplace could succeed; the law provides otherwise.

McMillan also contends that King's testimony established that King consented to McMillan's touching, and therefore McMillan committed no battery. In much the same vein, McMillan contends that the jury's verdict as to punitive damages must be rejected because there was insufficient evidence of McMillan's intent. McMillan also contends that the court should have severed[1] the trial to avoid prejudicing McMillan, and that damages were excessive. The sheriff's office contends that McMillan's conduct does not rise to the level of sexual harassment as a matter of law. "If there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, that verdict must be upheld." Price v. City of Charlotte, 93, F.3d 1241, 1249-50 (4th Cir. 1996) cert. denied, 520 U.S. 116 (1997). The court has considered the evidence against McMillan and concludes that the court must uphold the jury's verdict.

The court denies all of defendants' post-trial motions concerning liability. A motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure must be granted if "there is no legally sufficient evidentiary basis" for a jury's verdict. Price, 93 F.3d at 1250. The court denies the motions concerning liability because the verdicts are supported by a legally sufficient evidentiary basis.

---

[1]McMillan uses the term "bifurcation," but the court construes the argument to refer instead to "severance," which normally refers to the separation of claims, Gaffney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 441 (7th Cir. 2006), whereas "bifurcation" normally refers to the separation of sequential determinations, such as liability from damages and guilt from sentencing.

4

This court also has the authority to grant a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure. The court may order a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). The court finds that none of these situations is present here, and denies the motions for a new trial as to all liability issues.

### III.

In the alternative to the post-trial motions considered above, each defendant moves for remittitur. The court finds that oral argument is appropriate on the issue of remittitur as to the compensatory battery award, and orders a hearing.[2]

There is no specific provision for remittitur in the Federal Rules of Civil Procedure, but the courts have a longstanding practice of conditioning the denial of a Rule 59 motion for a new trial on the acceptance by the plaintiff of remittitur. Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 65-66 (1966); Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998). Under remittitur, the court gives the plaintiff the option of accepting a reduced award or opting for a new trial to determine damages. Here, the new trial would be as to the compensatory damage award for battery only.

---

[2]The court notes that McMillan has not raised the issue of whether the punitive damage award is constitutionally permissible under the due process clause. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996). The relationship between punitive and actual damages is one factor in a constitutional analysis of excessiveness. Id. at 580. Because remittitur or a new trial could affect compensatory damages, the court does not address and does not foreclose the issue of whether the punitive damage award against McMillan is constitutionally excessive.

Case 7:05-cv-00521-SGW-mfu   Document 202   Filed 04/08/08   Page 5 of 6   Pageid#: 1292

In this case, the compensatory damage award may be excessive because it may include a punitive element. The $175,000 compensatory award for battery cannot easily be squared analytically with the $50,000 compensatory award for the Title VII claim. This is so because the Title VII claim included the exact incident that constituted battery, and many other incidents and damages as well. That is, actual damages from the single battery are necessarily a subset of the damages from the Title VII violation. Because of the potential analytical inconsistency of a compensatory battery award that is more than three times the amount of the overarching Title VII award, the court will hear arguments on whether the court should order remittitur. If the court were to grant remittitur, the plaintiff would be able either to accept a lower compensatory battery award or opt for a new trial as to damages to determine the compensatory battery award anew.

### IV.

For the foregoing reasons, the court denies defendants' post-trial motions, with the exception of McMillan's motion for remittitur as to the compensatory award for battery. The court grants the parties a hearing to determine the proper disposition of McMillan's motion for remittitur.

**ENTER**: This 8th day of April, 2008.

UNITED STATES DISTRICT JUDGE